**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAEED M. COUSAR, | |
| Petitioner, | |
| v. | Civil Action No. 20-7014 (GC) |
| ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, *et al.*, | **OPINION** |
| Respondents. | |

**CASTNER, District Judge**

Before the Court is the Amended Petition (Amended Petition) for a Writ of Habeas Corpus of Petitioner Saeed M. Cousar ("Petitioner"), brought pursuant to 28 U.S.C. § 2254 (§ 2254). (ECF No. 5.) Respondents answered the Amended Petition (ECF No. 10), and Petitioner filed a reply brief (ECF No. 12). The Court has carefully considered the parties' submissions. For the reasons set forth below, and other good cause shown, the Amended Petition is **DENIED**, and a certificate of appealability shall not issue.

### I.    BACKGROUND

On June 23, 2017, Petitioner was convicted by a state jury of third-degree theft by deception and third-degree theft of identity. *See State v. Cousar*, No. A-2214-17T3, 2019 WL 6522283, at *1 (N.J. Super. Ct. App. Div. Dec. 4, 2019) (per curiam). The State presented evidence

that Petitioner unlawfully used the personal identifiers of W.S. (Whitlock Sanders)[1] to open a checking account in Sanders' name at Peapack Gladstone Bank. *See id.* Petitioner then transferred funds into that account from Sanders' existing savings and mortgage accounts at the same bank, all without Sanders' authorization. *See id.* Following merger of the offenses, the trial court imposed a discretionary extended term of ten years' imprisonment, including a five-year period of parole ineligibility. *See id.*

On August 29, 2018, Petitioner filed a direct appeal. (ECF No. 10-10.) Petitioner argued the following:

> POINT I
> THE SLEW OF HIGHLY DETAILED AND IRRELEVANT EVIDENCE OF PRIOR CONVICTIONS WAS INADMISSIBLE, CAUSED UNDUE PREJUDICE, AND NECESSITATES REVERSAL OF DEFENDANT'S CONVICTIONS.
>
> A. INTRODUCTION
>
> B. BECAUSE THERE WAS NO VALID NON-PROPENSITY PURPOSE FOR THE ADMISSION OF THIS EVIDENCE, IT FAILED TO MEET THE FIRST PRONG FOR ADMISSIBILITY UNDER COFIELD[2].
>
>> I. Because Motive, Absence Of Mistake, Opportunity, And Knowledge Were Irrelevant To The Case, They Could Not Provide A Basis For The Admission Of The Other-Bad-Act Evidence.
>>
>> II. The Other-Bad-Act Evidence Did Not Meet The Strict Requirements To Be Admissible To Demonstrate Common Scheme Or Identity.
>
> C. BECAUSE THE VOLUME AND DETAIL OF THE EVIDENCE RENDERED ITS PREJUDICIAL IMPACT GREATER THAN ITS PROBATIVE VALUE, IT FAILED TO

---

[1]    The Appellate Division used initials and a pseudonym to protect the victim's identity and did likewise for other victims named in the opinion.

[2]    *State v. Cofield,* 127 N.J. 328, 338 (1996).

MEET THE FOURTH PRONG FOR ADMISSIBILITY UNDER
<u>COFIELD</u>.

D. THE ADMISSION OF THE FACT DEFENDANT'S PRIOR
BAD ACTS RESULTED IN CONVICTIONS WAS
INAPPROPRIATE AND UNDULY PREJUDICIAL.

E. THE FAILURE TO GIVE A [N.J.R.E.] 404(B) CHARGE THAT
CLEARLY EXPLAINED THE PERMISSIBLE USE OF THE
PRIOR-BAD-ACT EVIDENCE NECESSITATES REVERSAL.

F. CONCLUSION.

POINT II
THE PROSECUTOR COMMITTED MISCONDUCT WHEN, IN
SUMMATION, HE PRESENTED AN INFLAMMATORY
DISPLAY: A PUZZLE, MADE UP OF PIECES OF EVIDENCE
THAT, WHEN COMPLETE, CONSTITUTE DEFENDANT'S
FACE. (NOT RAISED BELOW).

POINT III
THE IDENTIFICATION OF DEFENDANT FROM THE
SURVEILLANCE STILLS WAS IMPROPER AND
NECESSITATES REVERSAL OF HIS CONVICTIONS. (NOT
RAISED BELOW).

POINT IV
EVEN IF NONE OF THE ERRORS WOULD BE SUFFICIENT
TO WARRANT REVERSAL, THE CUMULATIVE IMPACT OF
THOSE ERRORS DENIED DEFENDANT DUE PROCESS AND
A FAIR TRIAL. (NOT RAISED BELOW).

POINT V
DEFENDANT'S SENTENCE IS EXCESSIVE AND THE
IMPOSITION OF A DISCRETIONARY PAROLE
DISQUALIFIER UNCONSTITUTIONAL.

(*See id.* at 2-4.)

On December 4, 2019, the New Jersey Superior Court, Appellate Division affirmed the

Petitioner's conviction. *See Cousar,* 2019 WL 6522283, at *11. The court highlighted testimony

presented during the six-day jury trial to provide context for their decision:

A. <u>The Thefts</u>

On June 27, 2013, a checking account in Sanders's name was opened at PG Bank and linked to his savings account at the bank by someone other than Sanders, using Sanders's personal identifiers, including: home address, date of birth, social security number, and driver's license number. The email address listed for the new checking account – chase2350@yahoo.com – was unknown to Sanders. The IP address associated with the device that completed the remote application for the checking account and activated internet banking was 72.76.189.54. The same IP address was used in all of the online transactions made in this case.

On three different dates, a total of approximately $62,000 was transferred from Sanders's savings account to the checking account and fifteen transfers were made from the checking account to other non-PG Bank accounts through PG Bank's "bill pay" function. The payees for those transfers were listed as William Sanders, James Sanders, S. Cousar, or Saeed Cousar. Two phone numbers were associated with these transfers, 201-920-7432 and 201-589-7656. The parties stipulated the 201-589-7656 number was serviced by Sprint and the listed subscriber was defendant, at the same Stevens Avenue address.

Eleven of those fifteen transfers, which totaled approximately $52,000, were transferred to a Bancorp account. Bancorp issued prepaid, reloadable cards serviced by Green Dot Corporation to that Bancorp account. It was stipulated almost $9,000 was deposited from Bancorp to a Green Dot account. The name associated with the Green Dot account was Whitlock Sanders and had false identifiers for the phone number, 201-589-7656, the email address, chase2350@yahoo.com, and the street address, 328 Stevens Avenue, Jersey City.

Without objection, the State admitted into evidence videos and still photographs from multiple ATMs' surveillance footage in which someone withdrew money from the Green Dot account. More than $900 was removed from the account through three ATM transactions.

Four of the bill pay transfers, totaling approximately $12,000, went into a One West bank account. It was stipulated One West issued prepaid cards known as Magic Cards, which permit customers to withdraw cash at ATMs. Approximately $11,000 was deposited from One West onto a Magic Card. The cardholder information associated with that account identified defendant and his phone number 201-589-7656, email address scousar1516@gmail.com,

home address 328 Stevens Avenue Jersey City, date of birth, and social security number. Detective Rachel McCaffrey from the Prosecutor's Office special investigations unit testified that she "confirm[ed]" the date of birth and social security number belonged to defendant.

In addition to the bill pay transfers, $9,000 was transferred directly from the Sanders's PG Bank savings account into a PayPal account. The parties stipulated the PayPal account was listed in Sanders's name, two addresses were used: 328 Stevens Avenue, Jersey City and one in Mendham. Sanders's correct date of birth; the email address WhitlockSanders@gmail.com; and the phone number 201-920-7432. The phone number belonged to an Edwin Santiago. Detective Rachel McCaffrey of the Hudson County Prosecutor's Office Special Investigations Unit, who investigated the theft, testified that she never spoke to Santiago. Santiago, Anthony Sinea, Derrick McCall, and Eric Jefferson, lived at 328 Stevens Avenue, a three-bedroom apartment, with defendant, who was the sole tenant listed on the lease.

Sanders testified he did not open, or authorize anyone to open, the Bancorp, OneWest, or PayPal accounts in his name.

It was stipulated the listed subscriber of the IP address was Sinea, with an address at 328 Stevens Avenue, Jersey City. The IP address is associated with the phone number 201-589-7656, the email address scousar1516@gmail.com, and the username scousar1516. As discussed above, it was stipulated Sprint provided service for that phone number, and defendant was the subscriber with the same Stevens Avenue address. Det. McCaffrey testified that she never located or interviewed Sinea.

B. Evidence Seized During Search Warrant

Detective McCaffrey executed a search warrant at defendant's 328 Stevens Avenue residence, seizing several documents addressed to defendant, a Verizon bill addressed to Sinea, and a deposit slip with McCall's name on it. In one bedroom, a laptop was found, and, in another bedroom, a desktop computer was found. A U.S. bank statement for a N.M. was seized. Also confiscated were pieces of paper with sets of nine-digit numbers written on them, which according to Det. McCaffrey, was significant because "social security numbers happen to be nine digits," and the other "numbers with the slashes appear to be date[s] of birth." She also stated that when she googled the remaining numbers they "came back as [American Bankers Association] routing numbers."

Nicolas Perone, an FBI forensic examiner, testified regarding forensic examination of the desktop computer. The computer was registered to cousar1516@live.com. Of the numerous emails accessed on the computer, one, dated June 27, 2013, had the subject line, "Your bank account has been confirmed." There was also a welcome email sent to a Gmail account from PayPal, addressed to "Whitlock Sanders." The desktop computer retained "web fragments" containing the email address chase2350@yahoo.com. The computer was not password protected. Perone explained that an IP address is not specific to an individual computer or device, but, rather, corresponds to a physical location.

C. Bad Acts Testimony

Prior to trial, a Rule 104 hearing was conducted in which the State sought the court's permission to admit evidence of fourteen prior incidents of defendant's bad acts against different victims resulting in convictions, in accordance with N.J.R.E. 404(b), to demonstrate a common scheme or plan, motive, absence of mistake, opportunity, knowledge, or identity.

Over defendant's objection, the motion court – which did not conduct the trial – admitted twelve of the incidents, in which defendant was convicted for: (1) theft by deception in 1998; (2) theft by deception in 2001; (3) identity theft in 2003; (4) receiving stolen property in 2003; (5) theft by deception in 2004; (6) possession of controlled dangerous substances in 2004 where fraudulent use of credit card charges were dismissed; (7) tendering bad checks in 2007; (8) identity theft in 2008; (9) wrongful impersonation in 2008; (10) theft by deception in 2008; (11) computer theft in 2011; and (12) fraudulent purchases in 2013. However, the State chose to present evidence of only two of the incidents at trial: fraudulent purchases in 2013 and wrongful impersonation in 2008.

1. First Incident

Before the 2013 indictment was presented as the first prior bad act, the court gave a curative instruction to the jury discussed later in this opinion. The indictment charged the defendant with third-degree computer theft. Specifically, the indictment charged that defendant "knowingly did access, or attempt to access, a database, computer, computer software, or computer network, to obtain services, property, personal identifying information or money, from [L.O. (Oxley)], with the purpose to deprive the owner thereof." The jury was read defendant's judgment of conviction for the offense.

Oxley testified that in 2011, he sold his home and deposited the proceeds from the sale into a savings account with Chase Bank. One

day, he received a bank statement, which revealed, "$8,000 or more was gone." He reported the fraud to the bank and the police.

Detective Richard Jupinka of the Manchester Township Police Department testified extensively as to his investigation into the Oxley fraud. He confirmed Oxley's testimony and noted two of the transactions from Oxley's account were to pay a premium for an Esurance automobile insurance policy in defendant's name. The policy listed defendant's address as 142 Boswick Avenue, Jersey City, and had an email address of scousar1516@yahoo.com. The jury was further advised the IP address from the device that made the payments was registered to a M.J. at the 142 Boswick Avenue address. Chase Bank disclosed there was no record of defendant having an account at their bank.

2. Second Incident

Regarding the second prior bad act, the jury was advised of the 2008 complaint against defendant, which led to his conviction for third-degree identity theft of M.S. (Smith). Smith gave detailed testimony regarding his discovery and reporting of charges on his credit card statement that neither he nor his wife had made, and an account that was added to his bank account without his knowledge or authorization.

Sergeant Jeffrey Tucker of the Denville Township Police Department, who investigated Smith's complaint, confirmed Smith's testimony. Sgt. Tucker discovered that the person who secured a bank loan in Smith's name to pay for the car presented an insurance card in defendant's name at the car dealership. He further testified that defendant was picked out of a photo array by an employee of the dealership. Sgt. Tucker itemized the purchases made with the fraudulent card and stated some of the charges were: associated with the email address chase2350@yahoo.com; ordered from a computer with an IP address registered to Kevin Brown; and for items shipped to the address defendant lived at the time.

Sgt. Tucker testified, over defense's objection, about executing a search warrant of defendant's home. Tucker seized a compact disc (CD) labeled "IDs," which was, in his opinion, "short for identification." Admitted into evidence was a document Tucker stated was "a list of names with Social Security numbers, some with birth dates, some with driver's license numbers — I believe it was 100 — about 150 different people."

7

D. The Defense
Through the testimony of his friend Willie Thomas and his cousin McCall, defendant contended someone else in his apartment committed the theft from Sanders. Both witnesses testified defendant lived at 328 Stevens with Sinea, Santiago, McCall, and Eric Jefferson. The witnesses further testified all the apartment's tenants had access to and regularly used the non-password protected computer seized by the prosecutor's office.

On cross-examination, however, both Thomas and McCall buttressed the State's case by identifying defendant as the man in the stills from the ATM's surveillance footage withdrawing money from the Green Dot account.

E. Summation
In support of the contention that defendant did not commit the theft, defense counsel pointed out that the IP address was in Sinea's name and that McCall, Santiago, Jefferson, or Sinea were the perpetrator(s), who were never spoken to or investigated by the prosecutor's office.

As for the State, the prosecutor emphasized defendant's role as the identity thief, by using visual representations of the identified evidence in the shape of puzzle pieces that when placed together as a single image revealed the surveillance still photo identified as defendant.

F. Jury Instruction - Bad Acts
After summations, in relevant part, the jury was given the following instruction during the final charge and a similar instruction before the introduction of any bad acts testimony:

The [S]tate has introduced evidence that the defendant may have committed other crimes involving theft by deception and wrongful impersonation. Normally, that type of evidence is not permitted under our rules. Our rules exclude evidence that a defendant has committed other crimes, wrongs or actions when it's offered only to show that he has a disposition, a tendency to do wrong and, therefore, must be guilty of the present charge.

Before you can give any weight to this other evidence, you must be satisfied that the defendant committed these other wrongs, crimes or actions. If you're not so satisfied, you may not consider it at all.

However, our rules do permit evidence of other crimes, wrongs or actions when the evidence is used for certain, specific narrow

8

purposes. In this case, the [S]tate alleges that the evidence of these prior crimes, wrongs, actions, are relevant to a common scheme or plan, knowledge, the absence of mistake or accident. Specifically, the [S]tate contends that the current crime is part of a common scheme or plan by the defendant to steal victim's -- from victims by exploiting their personal information. The [S]tate contends that the prior crimes, wrongs, actions are relevant to provide the defendant's knowledge of the theft, the stolen money, the absence of mistake or accident. That is, the [S]tate contends that the transfer of the money from the Peapack-Gladstone Bank was the result of ... intentional criminal conduct and it was not the result of some innocent ... banking accident or mistake.

Whether this evidence does, in fact, demonstrate a common scheme or plan, knowledge, absence of mistake, that's for you to decide. You may decide that the evidence does not demonstrate a common scheme or plan, or knowledge, or absence of mistake and is not helpful to you at all. In that case, disregard it.

On the other hand, you may decide that the evidence does demonstrate a common scheme or plan, knowledge, absence of mistake and, if so, use it for that specific purpose only.

However, you may not use this evidence to decide that the defendant has a tendency to commit crimes or that he is a bad person. That is, you may not decide that just because the defendant may have committed other crimes, wrongs or actions, he must be guilty of the present offense. I have admitted this evidence to help you decide the specific questions of a common scheme or plan, knowledge, or absence of mistake. You may not consider it for any other purpose. You may not find the defendant guilty now simply because the [S]tate offered evidence that he may have committed other crimes on a prior occasion. (Emphasis added).

G. Sentencing

After jury deliberations, defendant was found guilty of third-degree theft by deception and third-degree theft of identity. At the subsequent sentencing, the court applied aggravating factors three, six, nine, eleven, and twelve. N.J.S.A. 2C:44-1(a)(3) (risk that defendant will commit another offense); - 1(a)(6) (extent of defendant's prior criminal record); -1(a)(9) (the need to deter defendant and other); -1(a)(11) (imposition of a fine, penalty or order of restitution without also imposing a term of imprisonment would be perceived by the defendant or others merely as part of the cost of doing business); and - 1(a)(12) (offense was against a person defendant knew or should have known was 60 years of age or older,

> or disabled). The court applied only mitigating factor six. N.J.S.A.
> 2C:44-1(b)(6) (defendant will compensate the victim for the damage
> he sustained).
>
> The court, after merger, sentenced defendant to an extended ten-year
> prison term with a five-year period of parole ineligibility. The
> sentence was the maximum possible extended-term sentence, with
> the maximum period of parole ineligibility.

*See Cousar,* 2019 WL 6522283, at *1-5 (Footnotes omitted).

On April 7, 2020, the New Jersey Supreme Court denied certification. *State v. Cousar,* 241 N.J. 328, 228 A.3d 214 (2020). Petitioner did not seek post-conviction relief, nor did he seek a writ of certiorari to the United States Supreme Court.

Petitioner then filed a habeas petition with this Court, executed on June 3, 2020, in which he raised eighteen grounds for relief, along with an application to proceed *in forma pauperis.* (ECF No. 1 & 2.) On October 14, 2020, the court granted Petitioner's application to proceed *in forma pauperis,* ordered Petitioner to show cause within 30 days as to why the habeas petition should not be dismissed as a mixed petition, and ordered Petitioner to inform the court of which of his claims remained unexhausted, specifying that Petitioner must either: (1) withdraw his unexhausted claims and have the Court rule on his exhausted claims; or (2) seek a stay and abeyance pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005). (ECF No. 4.) On October 26, 2020, Petitioner elected to voluntarily withdraw claims ten, eleven, thirteen, fourteen and seventeen. (ECF No. 5.) On October 29, 2020, the withdrawn claims were dismissed without prejudice. (ECF No. 6.) Petitioner thereby submits the following for habeas review:

> GROUND ONE
>
> Petitioner is arguing the highly detailed and irrelevant evidence of
> prior conviction wa[s] inadmissible, caused undue prejudice and the
> evidence did not meet the strict requir[e]ments to be admissible to
> demo[n]strate common schem[e] or identity, erroneous admission
> of prejudicial evidence was a crucial, highly significant factor in the

10

petitioner's conviction and resulted in a denial of fundamental fairness under the due process clause[.]

Petitioner asserts the following: Evidentiary Errors

A.) The admission violates federal rule of evidence 403, because its probative value was substantially outweighed by the danger of unfair prejudice[.]

B.) The competency and materiality of the detective and expert opinion testimony denied him a fair trial; and the trial court erred in allowing the detective and sergeant to bolster the[ir] credibility by a[n]swering questions concerning the[ir] testimony in the petitioner's prior arrest and convictions[.]

C.) R. Evid 404b evidence was admitted merely to show petitioner's reputation in committing similar crimes and to demo[n]strate his propensity to commit the charged offenses[.]

D.) The State courts merely misapplied State Law in allowing prosecution introduction of 404B evidence, because motive, absence of mistake, opportunity, and knowledge were irrelevant to the petit[i]oner's case[.]

E.) Petitioner was denied due process when the prosecutor was permitted to introduce two victims from petitioner's prior convictions as well as two officers Detective Jupinka from one prior conviction and Sergeant Tucker from another prior conviction, who gave highly detailed testimony[ie]s and highly inflammatory, minimally probative, other acts testimony which was [a] fundamentally unfair tactic of prejudicial evidence that was a significant factor in the petitioner's conviction.

F.) R. Evid 404B was violated when the prosecutor used the defendant's landlord, Ms. Porter from Dixon leasing as a character witness on how the defendant was paying his rent and this is the type of character and propensity evidence prohibited by R. Evid 404 B[.]

GROUND TWO

Petitioner is arguing that the prosecutor violated his rights to a fair trial and due process when in cross-examination of defendants witnesses asking them to identity who the person was in the surveillance stills was, highly impermissibly suggestive and which was an identification of petitioner and should [have] been subject to the body of law governing identification pro[ce]dures[.]

11

Petitioner asserts the following: Identification [P]rocedure

A.) The independ[e]nt reliability of defendant witnesses in-court identification during trial was not ade[q]uately established[.]

B.) There was never no eyewitness identification or any type of pretrial identification and no out-of-court identification[.]

C.) There was no personal [k]nowledge of and familiarity with the petitioner's appearance at the time the petitioner alleg[ed]ly committed the offenses charged[.]

D.) Petitioner was not advised prior to trial that his witnesses would be asked to make in-court identification of petitioner from surveillance still[.]

E.) Prosecutor made no effort to launch any sort of preliminary inquiry of defendant[']s witnesses as a precondition to an actual identification[.]

F.) State failed to establish any of the essential statutory elements of his conviction and contends the State failed to prove beyond a reasonable doubt his identity as the offender[.]

<u>GROUND THREE</u>

Petitioner arguing that the prosecutor merely used the 404B-crimes wrongs or other acts, because there was no credible, reliable legal evidence or any proof the petitioner knew of the victim and no proof or independ[e]nt evidence to prove the money was stolen or any personal information belonging to the victim and the petitioner contends that his Constitutional Rights were violated because prosecutor used the other bad acts to demonstrate petitioner's propensity that he committed the charged crimes.

Petitioner asserts the following: R. Evids 404B

A.) The admission of the bad act testimony's was so arbitrary and prejudicial that it deprived petitioner of a fundamentally fair trial[.]

B.) The relevant evidence its probative value was substanti[a]lly outweighed with unfair prejudice[.]

C.) Petitioner was denied due process of law when he was convicted and sentenced under a faulty indictment[.]

D.) There was a lack of probable cause for identity theft charge as well as theft by deception charge[.]

E.) Erroneous admission of prejudicial evidence was a crucial, highly significant factor in the petitioner's conviction[.]

F.) The trial court violated the clear mandate of R. Evid 404B and 403[.]

GROUND FOUR

Malicious prosecution and Fundamental unfair treatment

Petitioner contends that the individual who could be seen on the surveillance and despite the fact "No witness had identified the petitioner as a suspect and/or perpetrator of the theft "at the time in the investigation, the Somerset County Prosecutor's immediately named the petitioner as the suspect after reviewing petitioner 's past convictions and began a campaign to frame him as the perpetrator of the crimes[.]

Petitioner asserts the following:

A.) The officer nor the prosecutor did not interview or speak to petitioner about the offenses at any time before his indictment.

B.) Following the indictment the prosecutor obtained a warrant for petitioner ' s arrest[.]

C.) [A]lleging that the indictment was produced by perjury, where the grand jury indictment was procured with the involve[e]ment of falsehood.

D.) The prosecutor knew of other possible individuals that lived at the home with the petitioner and never interviewed or spoke with them.

E.) Petitione[r] contends that during the opening question to the grand jury from the prosecutor was asked did the petitioner op[en] the bank account and the detective answer "Yes" [] there was no such evidence to support that testimony[.]

F.) Petitioner's Due Process of the Fifth amendment was vio[l]ated because the petitioner had to stand trial on an indictment which the

13

prosecutor knew was based partially on perjured testimony, and the perjured testimony was material evidence[.]

G.) The prosecutor defensible tactic "to use opening and closing arguments to bring before the jury damaging facts not in evidence and never established[.]

GROUND FIVE

Petitioner argu[es] that the opinion-testimony was neither" rationally based on the perception of the witnesses "nor helpful to clear under standing of facts in issue as required by R. Evid 701

Petitioner asserts the following: R. Evid 701 and 403

A.) [T]he admission of lay-opinion identification from Derrick McCall, and Willie Thomas was improper under R. Evid. 701 and 403[.]

B.) [T]he testimony as a lay-witness, or for that matter the testimony of anyone who might have known petitioner at the time, teased the outer limits of R. Evid 701 because it was not clear that the testimony was "helpful to determination of a fact in issue[."]

C.) [T]he bank surveillance still themselves had already been received in evidence and the jury could see both surveillance stills and defendant[.]

D.) [E]ven if the testimony's was otherwise relevant, they should have been excluded because its probative value was substantially outweighed by the danger of unfair prejudice as defined by R. Evid 403[.]

E.) There wa[s] no personal knowledge of and familiarity with the defendant's appearance at the time the defendant's alleg[edl]y committed the offense charged.

GROUND SIX

Petitioner argue the failure of New Jersey Appellate Court's opinion to address all the issues raised on direct appeal and abuses its discretion when it based its decision on an erroneous view of the law and a clearly erroneous assessment of the facts committed a clear error of judgement[.]

Petitioner asserts the following: Direct Appeal errors

14

A.) [T]hat the independ[e]nt reliability of petitioner's witnesses in court identification was not adequately established[.]

B.) [T]he appellate court abuse its discretion by concluding that the identification testimony's complied with R.Evid 701[.]

C.) [F]ailure to review if the evidence adduced at petitioner's trial on guilt or innocence; when viewed in light most favorable to the prosecution was insufficient to allow a rational trier of facts to find petitioner guilty of "theft by deception and or Identity Theft.

D.) [W]here there is constitutional errors, appellate Courts must be convinced beyond a reasonable doubt that the errors did not contribute to the guilty verdict; otherwise the defendant is entitled to a retrial.

E.) [F]ailure to review if the use of the prior conviction served primarily to emphasize defendant's bad character rather than his state of mind to commit the charged crime.

F.) [T]he balance required by Rule 403 was not observed[.]

G.) [W]hether the testimony's of Identification by the defendant's witness[es] was "helpful to the determination of a fact issue under Rule 701(B) was not at all clear.

H.) [C]ontext of appellant's other claimed pro[c]edural, flaws had a compounded and unquestionably prejudicial effect.

GROUND SEVEN

Petitioner argues that the prior conviction was erroneo[u]sly admitted given the dissimilarities between the two episodes, the prior crime evidence was not probative of common plan or scheme. The probative worth of petitioner's conviction toward proving his intent to commit the instant offense was attenuated.

Petitioner asserts the following: R. Evid 404B and 403

A.) R. Evid 404B codi[fi]es the common law prohibition against the admission of propensity evidence; that is evidence presented to encourage the inference that because petitioner committed a crime once before, he is [the] type of person to commit the currently charged offense.

B.) The trial court never balanced the special probative value of the evidence against the danger of unfair prejudice to the defendant, using the considerations underlying R. Evid 403.

GROUND EIGHT

Petitioner argues that the danger the supposed inference to knowledge was obs[c]ured by the forbidd[e]n inference to propensity, particularly in petitioner's case in which the theory of knowledge is the probability that the petitioner would have obtained knowledge in the course of his repetitive involvement in criminal conduct.

Petitioner assert[s] the following: R. Evid 404B

A.) It was imper[m]issible to suggest that the petitioner's prior conviction for "theft somehow makes him more likely to have acted in a similar manner in the context of the present charge["].

B.) The marginal rel[e]vance of the prior conviction evidence, weighing the danger that it unfairly prejudiced the jury and because petitioner was previously convicted under nearly identical circumstances[.]

GROUND NINE

Petitioner contends the trial court never properly determine[d] that the evidence had some "special" relevance; that is, whether the evidence was offered to establish some material issue, such as intent or knowledge was offered solely, and impermissibly, to establish the petitioner's propensity for crime.

Petitioner assert[s] the following: Evidentiary Errors

A.) No evidence indicates a continuing or connected scheme of theft on the part of the petitioner.

B.) The participants in both events were entirely different indeed: it is entirely unclear if anyone besides the petitioner was involved.

C.) The relationship between the prior bad act and the charged crime was a[t]tenuated and qu[e]stionable relevance to the petitioner's intent to commit the charged crime and that the need for such evidence was minimal, and allowing the jury to know of the conviction's was highly prohibitively prejudicial[.]

D.) Prosecution used the prior conviction to serve primarily to emphasize petitioner's bad character rather than his state of mind to commit the charged crime[.]

E.) The balance required by R. Evid. 403 was not observed[.]

GROUND TWELVE

Petitioner was denied his constitutional rights to a fair trial and due process of law.

Petitioner asserts the following:

A.) [T]he indictment was palpably insufficient and failed to support facts supporting every essential element of the charged offen[s]es[.]

B.) [E]ngaged in fundamentally unfair tactics in his presentations and knowingly used false testimony[.]

C.) [M]ade stat[e]ment[s] that were calculated to inflame the passions of the jury against the petitioner.

D.) [V]iolated the rights by using false testimony that wasn't supported by evidence[.]

E.) Displayed tangible evidence in a manner that was unduly prejudicial.

F.) [N]o evidence before the gr[an]d jury or during trial to show that petitioner purposely obtained or deceived the victim or bank or evidence that the petitioner knew the money was stolen.

G.) Detective answered "yes" to a grand jury testimony from prosecutor identifying Petitioner as the perpetrator of the opening of the accounts when there was no such evidence to support it[.]

GROUND FIFTEEN

Petitioner claims that various statements made by the prosecutor during summation were not proper and amounted to the prosecutor crossing the lines of propriety because improperly vouches for the credibility of detective[.]

Petitioner asserts the following: [P]etitioner was directly implicated only by the testimony of the detective[.]

A.) At trial the prosecutor illegally, improperly and unethically appealed to the personal passions, prejudices and caprice of the individual Jurors and implied to the jurors asking them to find guilty[.]

## GROUND SIXTEEN

Petitioner contends that the trial court should have granted his motion for judgement of acquittal because "the evidence was insufficient to sustain a conviction for all charges.["]

Petitioner asserts the following:

A.) No person may be convicted of an offense unless each element of such offense is proved beyond a reasonable doubt. In the absence of such proof, the innocence of the defendant is assumed[.]

B.) [T]his was a computer related crime which the offense falls under because the indictment was totally defective and the charge theft by deception was false and the prosecutor misleading the grand jury into believing that defendant was the offender.

C.) The Somerset County Prosecutor was without [j]urisdiction to try [c]ounts one, [t]heft by deception and [c]ount two, [i]dentity [t]heft because the crime occurred in Hudson County, N.J. and [t]rying the case in the absence of [j]urisdiction violated [d]efendant's Due Process Rights.

## GROUND EIGHTEEN

Petitioner the damages for malicious prosecution may include the value of the defendant's loss of liberty any aggravated injuries suffered in jail or prison, attorney fee's lost wages and other economic harm damage to reputation, and mental or emotional pain and suffering an[d] a reversal of defendant's conviction and a release from prison and or passion release.

(ECF No. 1 at 18-36.) (Alteration in original.)

On January 8, 2021, Respondents submitted their Answer to Petitioner's application for federal habeas relief, which urges dismissal of the petition on both procedural and substantive grounds. (ECF No. 10.) First, as to Grounds One, Three, Seven, Eight, and Nine, Respondents

argue that these claims merely recycle evidentiary challenges already reviewed and rejected by the New Jersey courts on direct appeal. (*See id.* at 16.) These grounds concern the trial court's admission of prior bad acts evidence, which Petitioner claims unfairly prejudiced him in violation of N.J.R.E. 403 and 404(b). (*See id.* at 16-17.) Respondents emphasize that erroneous application of state evidentiary rules does not, in itself, warrant habeas relief. (*See id.* at 17.) Rather, a petitioner must show that the evidentiary ruling was so egregious that it rendered the entire trial fundamentally unfair. (*See id.* at 18.) Citing precedent from both the United States Supreme Court and the Third Circuit, Respondents maintain that Petitioner has failed to meet this demanding standard. (*See id.* at 21.)

With respect to Grounds Two, Five, and Six, Respondents defend the trial court's admission of lay identification testimony from defense witnesses during cross-examination. (*See id.* at 22.) The witnesses identified Petitioner as the person appearing in surveillance stills from the crime scene, which Petitioner contends invaded the jury's role in determining identity. (*See id.*) However, Respondents note that the Appellate Division upheld the testimony as proper lay opinion under N.J.R.E. 701 because the witnesses were personally familiar with Petitioner. (*See id.* at 22-23.) Respondents further argue that Petitioner did not object at trial, thereby undermining the claim of constitutional error, and that he fails to identify any clearly established federal law that would render this testimony a due process violation. (*See id.* at 22-23.) On this basis, Respondents conclude that the evidentiary ruling did not so infect the trial with unfairness as to merit habeas relief. (*See id.* at 23.)

Turning to Ground Fourteen, parts (e) and (f), Petitioner challenges the prosecutor's use of a visual demonstrative aid during summation, which depicted Petitioner's face assembled from individual pieces of evidence, likened to a puzzle. (*See id.* at 24-25.) Petitioner argues this display

was unduly suggestive and inflammatory. (*See id.*) Respondents counter that prosecutorial misconduct warranting habeas relief must be so prejudicial as to deprive the defendant of a fundamentally fair trial. (*See id.* at 25.) The Appellate Division, applying a well-established three-part inquiry, determined that the visual aid consisted solely of admissible evidence, that the prosecutor's comments were based on the trial record, and that the lack of a contemporaneous objection suggested defense counsel did not find the display prejudicial at the time. (*See id.* at 26-27.) Respondents maintain that these conclusions are not contrary to, nor an unreasonable application of, clearly established federal law. (*See id.* at 28-29.)

Accordingly, Respondents respectfully request that the petition for a writ of habeas corpus be denied in its entirety.[3] (*See id.* at 29.)

## II.    **LEGAL STANDARD**

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition. *See Harrington v. Richter*, 562 U.S. 86, 98 (2011); *Price v. Vincent*, 538 U.S. 634, 641 (2003). District courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 773 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication:

---

[3]    The response does not address all of the grounds raised in the habeas petition. The Court has nonetheless independently reviewed the full record and relevant legal authorities to ensure that each asserted ground is given due consideration.

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2)  Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015).  "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.*  Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In addition to the above requirements, a federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).  To do so, a petitioner must "'fairly present' all federal claims to the highest state court before bringing them in federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citing *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir. 2002)).  This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'" *Id.*  (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)).  To the extent that a petitioner's constitutional claims are unexhausted, a court can nevertheless deny them on the

merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007);

*Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005).

### III.    <u>DISCUSSION</u>

In evaluating the grounds for habeas corpus relief asserted by Petitioner, the claims fall

into several identifiable legal categories that, although overlapping in certain respects, can be

effectively grouped under discrete constitutional or evidentiary principles.  We address Petitioner's

claims via a categorized discussion of all grounds asserted.

### A.  **Improper Admission of Prior Bad Acts and Propensity Evidence (Grounds One, Three, Seven, Eight, and Nine)**

Petitioner principally challenges the trial court's admission of evidence related to his prior

convictions under Federal Rules of Evidence 403 and 404(b).  (ECF No. 2 at 6.)  He contends that

this evidence lacked probative value and was used impermissibly to establish his propensity to

commit the crimes charged.  (*See id.*)  Petitioner also asserts that the prior acts bore insufficient

similarity or connection to the charged conduct to support a permissible inference of identity,

motive, intent, or common scheme.  (ECF No. 2 at 10.)  More specifically, Petitioner argues that

(a) the trial court failed to conduct the necessary balancing under Rule 403 (Grounds One, Three,

Seven, Nine); (b) the prior acts evidence was irrelevant to any material issue and used solely to

prejudice the jury (Grounds Three, Eight, Nine); and (c) the probative value was marginal, and the

risk of unfair prejudice was substantial (Grounds One, Eight), and (d) the testimony of law

enforcement and prior victims served only to underscore petitioner's bad character rather than to

prove any element of the current offenses (Grounds One, Nine).  (ECF No. 1 at 18, 20, 24, 26.)

Collectively, these arguments challenge the fairness of Petitioner's trial and contend that

the erroneous admission of prior bad acts substantially contributed to his conviction in violation

of due process.  While state law errors in the application of evidentiary rules are not typically

cognizable on federal habeas review, such claims may warrant relief if the rulings were so arbitrary or prejudicial that they rendered the trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Keller v. Larkins*, 251 F.3d 408, 412-13 (3d Cir. 2001). Here, Petitioner alleges that the prior acts bore no legitimate connection to the elements of the charged crimes and were presented solely to demonstrate criminal propensity. (ECF No. 2 at 19.) However, both the trial court and the Appellate Division found that the evidence was admitted for legitimate purposes under state evidentiary law, including to show motive and intent.

In its opinion, the Appellate Division explained that in reviewing a trial court's admission of N.J.R.E. 404(b) evidence, appellate courts accord substantial deference, intervening only upon a clear abuse of discretion. *See Cousar*, 2019 WL 6522283, at *6. Such evidence of prior bad acts is generally inadmissible unless offered for a non-propensity purpose, such as proving motive, intent, identity, or absence of mistake. *See id.* The trial court must apply the four-pronged *Cofield* test, which examines relevance, similarity and temporal proximity, clear and convincing proof, and a balance of probative value against prejudicial effect. *See id.* In this case, the Appellate Division found that the motion court properly applied *Cofield*, admitting a very limited number of prior bad acts to rebut Petitioner's theory that others committed the offense, and to establish identity, knowledge, and a common scheme:

> Here, after conducting an N.J.R.E. 104 hearing, applying Cofield, the motion court issued a sixteen-page written opinion finding that twelve of the fourteen incidents involving defendant's crimes of identity thefts, theft, and theft by deception to obtain automobiles, consumer goods, and cash, were admissible because all four prongs of the Cofield factors were satisfied. As noted, only two of the twelve incidents were presented to the jury, thus, our focus is only on the evidence related to those incidents and defendant's contentions that only Cofield's first and fourth prongs were not satisfied.

The first prong was satisfied because the other crimes were similar to the offenses charged in this matter – identity theft and theft by deception. As the court determined they were relevant to show identity and absence of mistake given defendant's defense that others living with him committed the offenses against Sanders. The other crimes also were relevant to show a "common scheme or plan" in defendant's thefts. See Stevens, 115 N.J. at 305-06 (admissibility of evidence that tends to "prove[ ] the existence of an integrated plan, of which the other crimes and the indicted offense are components").

There were many digitally-gathered commonalities in the personally identifiable information – the same email address, defendants own name being used in a few transactions, phone numbers, and the last four digits of his social security number – between the prior crimes and the charge in question. And evidence from the prior crimes was relevant in helping the jury understand the importance of the numbers on the CDs and expose the flaws in the defense's theory that one or more of individuals that lived at 328 Stevens committed the crime and not defendant.

Under the fourth prong, the motion court closely weighed the probative value of the evidence against the apparent prejudice. The court properly recognized the jury could infer that because defendant was convicted of similar crimes he presumably could have committed this crime. Nevertheless, the court determined the probative value of the other crimes were extremely high because the facts of those crimes would tend to prove absence of mistake or knowledge about how they were successfully committed. Acknowledging the State's theory that defendant's prior bad acts establish a "common scheme or plan and absence of mistake," the court reasoned the probative value of the evidence under that particular theory was not outweighed by any prejudice to defendant.

We agree with the State that the detailed evidence of defendant's prior crimes it presented was necessary to disprove his theory that his apartment mates had access to his computer and committed the crime. From our review of the record, given the extensive efforts defendant performed to facilitate his theft crimes, the level of detail presented by the State was appropriate. Consequently, we reject defendant's contention, citing State v. Willis, 225 N.J. 85, 97 (2016), that the amount of other crimes evidence was so disproportionate it had the clear capacity to distract the jury's attention from whether he stole Sanders's identity for financial gain, and have it place too much weight on his prior criminal acts. The fact that the State limited its evidence of bad acts to only two of the twelve incidents that were

> deemed admissible is indicative of the State's restraint in its case
> despite the long trail of defendant's convictions that demonstrate a
> common scheme or plan and absence of mistake.

*See Cousar,* 2019 WL 6522283, at *6-7.

The Appellate Division's decision was neither contrary to nor an unreasonable application of federal due process principles under § 2254. Further, there is no indication that the challenged evidence was so unduly prejudicial that it undermined the fundamental fairness of the trial. Accordingly, habeas relief is not warranted on these grounds.

## B. Improper Law Enforcement Testimony (Grounds One, Five and Fifteen)

Embedded within Petitioner's broader evidentiary objections is a specific challenge to the testimony of detectives and other law enforcement witnesses. (ECF No. 2 at 7-8.) Petitioner contends that (a) officers were allowed to bolster their own credibility through testimony related to petitioner's prior convictions (Grounds One, Fifteen); (b) law enforcement witnesses gave improper lay opinion testimony identifying petitioner from surveillance footage (Grounds One, Five); and (c) the court improperly admitted expert or quasi-expert testimony without proper foundation or relevance (Ground One). (ECF No. 1 at 18, 22, 32.) These challenges raise concerns about undue influence on the jury and violation of the rules governing opinion testimony.

Petitioner's objections to law enforcement testimony rely on interpretations of evidentiary boundaries that are largely creatures of state law. (ECF No. 2 at 33.) Federal habeas courts do not sit as tribunals to reweigh the admissibility of testimony unless its admission rendered the proceedings fundamentally unfair. *See Keller*, 251 F.3d at 412-13. Here, Petitioner challenges the testimonies of Detective Richard Jupinka (Detective Jupinka) and Sergeant Jeffrey Tucker (Sergeant Tucker), two law enforcement officials that offered insight into Petitioner's prior convictions. (ECF No. 2 at 7-8.) More specifically, Detective Jupinka testified regarding his

investigation into the Oxley fraud, corroborating Oxley's account and linking insurance payments made from their account to a policy in Petitioner's name, using an email and address associated with him. (ECF No. 10-14 at 10-11.) Sergeant Tucker testified about the Smith fraud, confirming that an insurance card in Petitioner's name was used in the fraudulent transaction and that a dealership employee identified Petitioner from a photo array. (ECF No. 10-14 at 11-12.) Tucker also described evidence seized during a search of defendant's home, including a CD labeled "IDs" containing personal information for approximately 150 individuals. (ECF No. 10-14 at 12.) The testimony was evaluated and found admissible by the state courts.

Petitioner has not demonstrated that the testimony was false, misleading, or so prejudicial as to have had a substantial and injurious effect on the jury's verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). Accordingly, no habeas relief is warranted here.

## C. Improper Identification Procedures and Related Testimony (Grounds Two and Five)

Petitioner raises due process concerns regarding the identification procedures employed by the prosecution. (ECF No. 2 at 21.) He asserts that the in-court identifications made by defense witnesses in response to the prosecutor's questioning were highly suggestive and conducted without procedural safeguards. (ECF No. 2 at 18-19.) More specifically, Petitioner alleges that, (a) there was no prior out-of-court identification or eyewitness testimony (Ground Two); (b) witnesses lacked personal knowledge of petitioner's appearance at the time of the alleged offenses (Grounds Two, Five); (c) the lay opinion testimony identifying petitioner in surveillance stills violated Rules 701 and 403 (Ground Five); and (d) the identification testimony was not helpful to the jury and unfairly prejudicial (Ground Five). (ECF No. 1 at 19, 22.) These claims implicate the integrity of the identification process and the admissibility of lay opinion testimony, bearing directly on petitioner's due process rights and the reliability of the verdict.

Although the federal Constitution guarantees due process protections against unduly suggestive identification procedures, the Supreme Court has made clear that lay opinion testimony is permissible if it assists the jury in determining a fact in issue and is rationally based on the witness's perception. *See United States v. Beck*, 418 F.3d 1008, 1014-15 (9th Cir. 2005); *United States v. Pierce*, 136 F.3d 770, 774 (11th Cir. 1998). The testimony in question came from defense witnesses, Willie Thomas (Thomas) and Devin McCall (McCall), who personally knew Petitioner and identified him in surveillance stills admitted into evidence. (ECF No. 10-14 at 13.) During direct examination, Thomas pointed out Petitioner before the court, testified to knowing him since 2007, and explained that he spent three to four days a week at Petitioner's residence during 2013. (ECF No. 2-3 at 19.) The witness then identified Petitioner as the person depicted within surveillance stills presented during cross examination:

> Q: I'm going to show you S-58 and ask you to take a look at S-58.
>
> What's depicted in S-58?
>
> A: That looks like Saeed.
>
> Q: I'm sorry?
>
> A: I said that looks like Saeed.
>
> Q: Is that how he looked in 2013?
>
> A: No. He was a little heavier I believe.
>
> Q: Okay. So do you think that's Mr. Cousar or is it not?
>
> A: From me sitting right here it looks like – it looks like him from
>
> right here.
>
> Q: How about this picture, S-61. Who is depicted in S-61?
>
> A: Mr. Cousar.

27

Q: I'm sorry?

A: Mr. Cousar, that's how you say it, Saeed.

Q: Is this -- you -- you knew what Mr. Cousar looked like in 2013,

right?

A: Yes.

Q: Is -- is this Mr. Cousar in 2013?

A: It looks like him. Yes.

(ECF No. 2-3 at 26.)

Furthermore, during direct examination, defense witness McCall pointed out Petitioner

before the court, testified to being his cousin, and explained that they shared a residence in 2013.

(ECF No. 2-3 at 35.)  During cross examination, McCall identified Petitioner in surveillance stills:

Q: Okay. I'm going to show you S-58. Who is that in S-58?

A: Yes. That's Saeed --

Q: Okay.

A: -- Cousar.

Q: That's how he looked in 2013?

A Yes.

Q: S-61, who is that in S-61?

A: Yeah. That's the same person.

Q: Well, the same person, which person?

A: Saeed.

Q: Okay. Is that how he looked in 2013?

A: I guess so.

> Q: Well, you knew him in 2013, right?
>
> A: I know a lot of -- yes.
>
> Q: Is that him?
>
> A: A lot of -- it look like him.

(ECF No. 2-3 at 50.)

The Appellate Division found that the witness testimony met the requisite standards, stating:

> A witness who can demonstrate familiarity with the defendant may be permitted to testify regarding identification. See State v. Lazo, 209 N.J. 9, 22-24 (2012) (citing State v. Carbone, 180 N.J. Super. 95 (Law. Div. 1981)). For example, in Carbone, the court admitted the State's lay witness testimony of personal photographic identifications of the defendant before the jury by individuals who did not witness the crime, but nevertheless had personal knowledge of and familiarity with the defendant's appearance at the time the defendant committed the offense charged. 180 N.J. Super. at 96-100.
>
> Applying these principles, we discern no basis to conclude the identifications of defendant by his witnesses denied him due process and a fair trial. Clearly, they knew defendant and were able to inform the jury whether defendant was the person depicted in the bank surveillance cameras conducting ATM transactions.

See Cousar, 2019 WL 6522283, at *9.

Moreover, Petitioner acknowledges that he did not contemporaneously object to the identification testimony. (ECF No. 2 at 21.) This fact further undermines any assertion of fundamental unfairness. See United States v. Olano, 507 U.S. 725, 731–32 (1993). As such, Petitioner fails to demonstrate that the admission of this testimony rendered his trial constitutionally infirm, and § 2254 relief on these grounds is denied.

### D. Prosecutorial Misconduct and Malicious Prosecution (Grounds Fifteen and Eighteen)

Petitioner contends that the prosecution engaged in improper conduct both before and during trial, violating his rights to due process and a fair trial. (ECF No. 2 at 26-27.) Specifically, he alleges (a) the prosecutor's arguments—in particular, the use of a demonstrative aid during closing—included facts not in evidence and improperly appealed to the jury's passions and prejudices (Ground Fifteen) and, (b) as a result, Petitioner is entitled to damages. (ECF No. 1 at 21, 32, 36.) These allegations collectively assert that Petitioner's prosecution was infected by misconduct that undermined the fairness of the proceedings and rendered the conviction constitutionally infirm.

Petitioner's allegations of prosecutorial misconduct implicate core due process concerns. A prosecutor's remarks or conduct violate the Constitution if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). Here, the Appellate Division undertook a thorough analysis of the challenged summation display and determined that it comprised admitted evidence and permissible inferences drawn therefrom. The opinion reads:

> In this case, the photo of defendant's face had been admitted into evidence and contained inscriptions of admissible evidence. The image therefore contained facts that had already been provided to the jury. In addition, the prosecutor's comment that defendant was guilty was not his personal opinion but was based upon the evidence presented at trial. In sum, there was nothing about the prosecutor's conduct so egregious that we can reasonably conclude led the jury to a guilty verdict it otherwise might not have reached.

*See Cousar*, 2019 WL 6522283, at *10. Furthermore, the absence of a defense objection also supports the state court's conclusion that the display was not perceived as prejudicial at trial. *See*

*id.* The Supreme Court has cautioned that habeas courts should not engage in "finely tuned review of the wisdom" of state trial strategies. *Estelle*, 502 U.S. at 72. There is no basis here to conclude that the prosecutor's use of visuals or summation commentary rose to the level of a due process violation on this claim. As such, relief under § 2254 is denied.

Additionally, the writ of habeas corpus provides a mechanism for release from unlawful custody, not a vehicle for monetary compensation. *See Preiser v. Rodriguez,* 411 U.S. 475, 484 (1973). Claims for damages based on unconstitutional conviction or imprisonment must be brought, if at all, under 42 U.S.C. § 1983 and only after the underlying conviction has been invalidated. *See Heck v. Humphrey,* 512 U.S. 477, 486-87 (1994). Accordingly, to the extent Petitioner seeks damages, such relief is unavailable in this habeas proceeding.

### E. Insufficiency of the Evidence and Faulty Indictment (Grounds Three, Four, Six, Twelve and Sixteen)

Petitioner additionally argues that the evidence adduced at trial was insufficient to support the convictions and that the indictment itself was defective. Specifically, (a) there was a lack of probable cause to support the charges of identity theft and theft by deception (Ground Three, Sixteen); (b) the indictment was allegedly procured through perjured testimony (Ground Four, Twelve); and (c) the appellate court failed to assess whether a rational factfinder could have found guilt beyond a reasonable doubt based on the trial evidence (Ground Six, Sixteen). (ECF No. 1 at 21, 33.) These claims implicate the Due Process Clause and raise structural concerns about the integrity of the charging and adjudicatory process.

Petitioner's challenge to the sufficiency of the evidence must be evaluated under the exacting standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which requires a court to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable

31

doubt. Petitioner has not identified any material evidence that was absent or undermined the verdict under this standard. Likewise, claims concerning the alleged use of perjured testimony before the grand jury or deficiencies in the indictment are not cognizable in habeas proceedings unless they denied Petitioner a fundamentally fair trial, which he has failed to demonstrate. *See United States v. Mechanik*, 475 U.S. 66, 70 (1986); *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989).

## F. Lack of Proper Territorial Jurisdiction (Ground Sixteen)

Petitioner also raises a jurisdictional challenge, arguing that the Somerset County Prosecutor lacked territorial jurisdiction to prosecute the theft by deception and identity theft charges. (ECF No. 2 at 33.) He maintains that, (a) the charged conduct occurred in Hudson County, while the alleged victim resided in Morris County; (b) that neither his place of residence nor the location of the victim was sufficient, absent proof that material acts or consequences occurred within Somerset County, and; (c) that the grand jury evidence establishing the offense failed to support a finding of purposeful deception or unlawful gain. Petitioner contends that this jurisdictional defect is not merely procedural, but constitutional, as it deprived him of the protections of a properly constituted tribunal. He further urges the Court to assess this claim cumulatively alongside his other asserted procedural and evidentiary defects, arguing that the combined effect was prejudicial and fundamentally unfair.

Here, the question is not whether state law was correctly applied in every procedural respect, but whether the alleged error rises to the level of a constitutional violation. *See Estelle* 502 U.S. at 67–68. Petitioner has not demonstrated that the state trial court lacked subject matter jurisdiction under New Jersey law, nor has he shown that the exercise of jurisdiction by Somerset County resulted in a fundamentally unfair proceeding.

Further, Petitioner's assertion that the State failed to present evidence of jurisdictional facts to the grand jury similarly fails to state a cognizable claim under federal habeas standards. As courts have long recognized, deficiencies in grand jury proceedings do not afford a basis for federal relief unless they infect the trial itself with constitutional error. *See Lopez*, 865 F.2d at 32. ("If federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are a fortiori foreclosed in a collateral attack brought in a federal court."); *See also United States v. Mechanik*, 475 U.S. 66, 70 (1986). While Petitioner frames his claim as jurisdictional and constitutional, the substance of his argument rests on an alleged misapplication of state venue and jurisdictional statutes. Absent a showing that the forum was so devoid of connection to the offenses as to render the trial fundamentally unfair, no relief is warranted. Accordingly, the Court finds that Petitioner's claim regarding improper territorial jurisdiction fails to establish a violation of federal law and does not provide a basis for habeas relief.

### G. Appellate Court Errors and Denial of Meaningful Review (Ground Six)

Petitioner claims that the New Jersey Appellate Division committed clear error by failing to adequately address the issues raised on direct appeal. (ECF No. 1 at 23.) Ground six contends that, (a) the appellate court misapplied governing evidentiary law, particularly with respect to Rules 701 and 403; (b) the court failed to consider whether the evidence at trial was sufficient to support a conviction beyond a reasonable doubt; (c) the cumulative effect of multiple constitutional errors was not considered; and (d) the appellate opinion reflected an erroneous view of the law and facts and constituted an abuse of discretion. (*See id.*) These claims assert a due process violation rooted in the failure of the appellate review process to function as a meaningful corrective mechanism.

Petitioner's claim that the Appellate Division erred in its evaluation of his appeal does not present a cognizable basis for habeas relief. Federal habeas review is confined to violations of federal constitutional rights, not to whether a state court properly interpreted state law. *See Swarthout v. Cooke*, 562 U.S. 216, 220-222 (2011). Even assuming the appellate court misapplied New Jersey evidentiary principles, Petitioner has not identified any clearly established federal law that required a different result. Nor does a claimed deficiency in the state appellate process, standing alone, violate due process where the trial itself was fair. *See Ross v. Moffitt*, 417 U.S. 600, 611 (1974). Absent a showing of structural defect or fundamental unfairness at trial, this ground cannot support habeas relief.

## IV.    CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because jurists of reason would not disagree with this Court's conclusion that Petitioner has failed to make a substantial showing of the denial of a constitutional right, Petitioner's habeas petition is inadequate to deserve encouragement to proceed further. As such, a certificate of appealability is denied.

## V.    <u>CONCLUSION</u>

For the reason set forth above, and other good cause shown, the Amended Petition is

**DENIED**.  A certificate of appealability shall not issue.  An appropriate Order follows.

**Georgette Castner**
**United States District Judge**

Dated: August 4, 2025